UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CELLCO PARTNERSHIP, d/b/a VERIZON WIRELESS, <br><br> Plaintiff, <br><br> v. <br><br> THE TOWN OF LEICESTER, MASSACHUSETTS, THE TOWN OF LEICESTER, MASSACHUSETTS ZONING BOARD OF APPEALS, and DAVID KIRWAN, DAVID ORTH, VAUGHN HATHAWAY, JIM BUCKLEY, AND PAUL SCHOLD, in their Capacities as Members of the TOWN OF LEICESTER, MASSACHUSETTS ZONING BOARD OF APPEALS <br> Defendants. | Civil Action No. 16-10693-MGM |

MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT
(Dkt. Nos. 15 & 28)

September 29, 2017

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

In October of 2015, Plaintiff, Cellco Partnership, doing business as Verizon Wireless ("Verizon") applied for a special permit to install a wireless communications facility at 30 Huntoon Memorial Highway in Leicester, Massachusetts. After holding four public hearings, the Town of Leicester Zoning Board of Appeals ("ZBA") denied the application in a decision dated March 9, 2016. Verizon then filed this case against the Town of Leicester, the ZBA and members of the ZBA, in their official capacities, on April 11, 2016. Plaintiff asserts the denial of the special permit application violates Section 704 of the Telecommunications Act of 1996, 47 U.S.C. § 332 (the "TCA") because the denial (1) is not supported by substantial evidence and (2) has effect of prohibiting the provision of personal wireless services. Additionally, Plaintiff asserts the Board exceeded its authority and violated Massachusetts law because the decision was arbitrary and capricious.

The case was initially assigned to Judge Timothy Hillman and proceeded through the filing of cross motions for summary judgment. Following oral argument on those motions, Judge Hillman entered an order of recusal on April 11, 2017 and the case was transferred to this court. This court held a status conference in June of 2017 and the parties re-argued their summary judgment motions on August 3, 2017.

## II.   JURISDICTION

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over the claims in Counts I and II, which are brought pursuant to the TCA, which allows persons effected by a local government's denial of an application to install personal wireless service facilities to bring an action within thirty days of the local government's action. 47 U.S.C. § 332(c)(7)(B)(v). Verizon's third claim arises under state law. Federal courts may exercise supplemental jurisdiction over state law claims related to and brought together with claims arising under federal law. 28 U.S.C. § 1367.

## III.   SUMMARY JUDGMENT STANDARD

At the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party "and draw all reasonable inferences in its favor." *CNE Direct, Inc. v. Blackberry Corp.*, 821 F.3d 146, 148 (1st Cir. 2016). "Summary judgment is permissible only when examination of the record in that light reveals 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Flovac, Inc. v. Airvac, Inc.*, 817 F.3d 849, 853 (1st Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" *Patco Const. Co. v. People's United Bank,* 684 F.3d 197, 206–07 (1st Cir. 2012) (quoting *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of*

*Carolina*, 532 F.3d 28, 30 (1st Cir. 2008)). "Cross-motions for summary judgment require the district court to 'consider each motion separately, drawing all inferences in favor of each non-moving party in turn.'" *AJC Int'l, Inc. v. Triple-S Propiedad*, 790 F.3d 1, 3 (1st Cir. 2015) (quoting *D & H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co.*, 640 F.3d 27, 34 (1st Cir. 2011)).

## IV. STATUTORY BACKGROUND

The First Circuit describes the TCA as representing "an exercise in cooperative federalism that attempts, subject to five limitations, to preserve state and local authority over the placement and construction of telecommunications facilities." *Green Mountain Realty Corp. v. Leonard* (*Green Mountain II*), 750 F.3d 30, 38 (1st Cir. 2014) (internal quotation marks and alterations omitted). Under the TCA, state and local governments and instrumentalities may regulate the placement of wireless service facilities, provided they (1) act on requests to authorize the placement, construction, or modification of such facilities within a reasonable time, (2) do not give consideration to any "environmental effects of radio frequency emissions" that comply with FCC regulations, (3) do not "unreasonably discriminate among providers of functionally equivalent services," (4) make all decisions in writing and support those decisions with "substantial evidence contained in a written record," and (5) do not make decisions that "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B). The court describes these last two limitations in more detail as Verizon asserts these two were violated by the ZBA decision.

"'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Green Mountain Realty Corp. v. Leonard (Green Mountain I)*, 688 F.3d 40, 50 (1st Cir. 2012) (quoting *Sw. Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 58 (1st Cir. 2001) (*abrogated on other grounds by T-Mobile South, LLC v. City of Roswell*, 135 S. Ct. 808 (2015)). The decision of a local authority is entitled to deference, "'provided that the local board picks between reasonable

3

inferences from the record before it.'" *Id.* (quoting *Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 23 (1st Cir. 2002)). Though this is a deferential standard, it "is not a rubber stamp" and a local authority "is not free to prescribe what inferences from the evidence it will accept and reject, but must draw all those inferences that the evidence fairly demands." *Green Mountain I*, 688 F.3d at 50 (internal quotations omitted). "The burden of demonstrating that the determination of a local authority is not supported by substantial evidence is with the party seeking approval." *Id.*

Similarly, the telecommunications provider "has the burden to show an effective prohibition [on the provision of personal wireless services] has occurred." *Omnipoint Holdings, Inc. v. City of Cranston*, 586 F.3d 38, 48 (1st Cir. 2009). In order to show an effective prohibition, the telecommunications provider must establish both a "significant gap" in a carrier's coverage in an area and an absence of feasible alternatives to the proposed solution for remedying that significant coverage gap. *Id.* A telecommunications provider "attempting to show that local authorities have rejected the only feasible plan," must demonstrate not only that the local authority denied the application, "but that further reasonable efforts to find another solution are so likely to be fruitless that it is a waste of time even to try." *Green Mountain II*, 750 F.3d at 40 (internal quotation marks omitted). A telecommunications provider that does not "prove it investigated thoroughly the possibility of other viable alternatives" has not met its burden. *Omnipoint Holdings*, 586 F.3d at 52 (internal quotation marks omitted).

When a local authority has made findings about coverage gaps and whether there are feasible alternatives to the proposed solution, a court conducting an "effective prohibition" analysis grants "no special deference" to the conclusions reached by the local authority. *Green Mountain II*, 750 F.3d at 39. It is up to the court to definitively determine "whether or not a local denial constitutes an effective prohibition violative of the [TCA]." *Id.* at 38-39. "When conducting the 'effective

4

prohibition' inquiry, district courts" can consider, and may even require parties to present, evidence that was not part of the record before the local authority. *Id.* at 39.

Once the court determines a denial has "effectively prohibited [a wireless service provider] from providing wireless services . . . it is incumbent upon the district court to craft an appropriate remedy." *Id.* at 42. Courts should craft remedies based on "the specific facts and circumstances appearing in the record" before it. *Id.* "'[I]n the majority of cases the proper remedy for a zoning board decision that violations the [TCA] will be an order . . . instructing the board to authorize construction,'" rather than allow zoning boards to again consider an application and issue a decision that complies with the TCA. *Id.* at 41-42 (quoting *Nat'l Tower*, 297 F.3d at 21-22).

## V. FACTUAL BACKGROUND

The following facts are taken from the parties' 56.1 statements and the minutes of the public hearing. Most of the facts in this summary are undisputed, those facts which are disputed are noted. Verizon, through an affiliate, is a Federal Communications Commission licensed provider of personal wireless services. In or around 2015, Verizon identified an area in the southern part of Leicester, Massachusetts, where its network capacity is insufficient, creating what Verizon believes to be a "significant coverage gap." The gap extends over portions of several roads, including sections of Route 56, Pleasant Street, Clark Street, and Peter Salem Road, along which thousands of vehicles travel daily. Verizon used computer modeling to define a search area within which newly placed wireless facilities would have a high probability of remedying the gap in coverage. Once the search ring was designated, Verizon utilized real estate specialists to search for existing buildings, towers, or other structures on which personal wireless services facilities capable of closing the coverage gap could be mounted. Verizon considered town-owned sites, including the Clark Street and Lehigh Road water tanks and the Memorial School. During the public hearing, Verizon representatives

5

described working with the Town Administrator to identify those sites and described them as insufficient because the existing structures were too short for direct mounting of antennas and the parcels on which they were located were too small or otherwise unsuitable for constructing a new tower. During the hearing questions arose about the extent to which Verizon worked with the Town Administrator to review potential sites. The record before this court includes a declaration by the Town Administer stating he offered to provide assistance to Verizon regarding alternative sites, but that Verizon representatives did not respond to that offer.

After defining the search area, Verizon identified a parcel located at 30 Huntoon Memorial Highway (Proposed Site), near the center of the search area, as a potential location for a new tower. Verizon proposes constructing a 150 foot monopole on the property. Such a tower constructed at the Proposed Site will provide coverage to between 1,100 and 1,500 nearby residents and motorists on Route 56, Pleasant Street, Clark Street and Peter Salem Road. The tower will not, however, completely eliminate coverage gaps in Leicester.

On October 29, 2015, Verizon filed an application for site plan approval with the Leicester Planning Board. That application was later approved. At the same time, Verizon also filed an application for a special permit with the ZBA. The ZBA held a public hearing on the application, which commenced on December 9, 2015 and continued on January 20, 2016; February 17, 2016; and March 9, 2016. The ZBA denied the application in a written decision filed on March 22, 2016.

As proposed, the tower will be located 63 feet from the nearest property line and more than 100 feet from all other property lines. Although the section of the Leicester zoning ordinance applicable to wireless communications facilities specifies applications must include a fall zone analysis, Verizon did not include such analysis with its application. In response to concerns raised by members of the ZBA, Verizon supplemented its materials with a fall zone analysis describing the proposed tower and explaining that in the very unlikely event of catastrophic failure, it will collapse

from its midpoint, resulting in a fall zone of approximately 75 feet. During the hearing there was a discussion of the possibility of moving the tower to prevent its fall zone from including any portion of an abutting property. Verizon did not amend its application to relocate the tower prior to the vote on its application, but stated, at the hearing and in its briefing before this court, it is willing to shift the tower to the east twelve feet so that no abutting property is within the fall zone.

During the public hearings on the special permit application, members of the ZBA identified concerns related to the siting of a 150-foot tower at the Proposed Site. These included the issues related to the fall zone, the proximity of the tower to residential neighborhoods, and an absence of vegetation tall enough to screen the visibility of the tower. On several occasions, members of the ZBA asked about other sites, including one known as the Cooper's Farm site. There are fewer residential neighborhoods around the Cooper's Farm site and members of the ZBA expressed the belief that a tower at that location would have less of a visual impact than a tower at the Proposed Site.

In response to a request from the ZBA, Verizon provided the ZBA with coverage maps showing the anticipated coverage provided by a tower at Proposed Site and the coverage provided by a tower at the alternative Cooper's Farm site. Those maps show a tower at the Cooper's Farm site will not provide coverage to all the areas that would be covered by a tower at the Proposed Site. At the public hearing, members of the ZBA asked whether Verizon had any plans for a future tower to fill in the coverage gap that would remain after construction of a tower at the Proposed Site. Verizon representatives stated the company did not have current plans for any additional towers. Members of the ZBA observed that a tower sited at Cooper's Farm would provide coverage over a large part of the area covered by a tower at the Proposed Site. They wondered whether the coverage gaps in Leicester could be fully remedied by a tower sited at Cooper's Farm combined with an additional tower. When discussing the feasibility of a tower at the Cooper's Farm site, a member of

7

the ZBA asked whether a taller tower on that site could provide coverage equivalent to a tower at the Proposed Site. In response, Verizon's RF engineer stated that Verizon did not want to erect a tower tall enough to require lights. He also reiterated that the Proposed Site was the preferred site based on engineering considerations. It is not clear from the record whether the main areas of concern identified by Verizon when defining the coverage gap—portions of Route 56, Pleasant Street, Clark Street, and Peter Salem Road—would be covered by a tower installed at the Cooper's Farm site.

## VI. DISCUSSION

Verizon claims the ZBA's denial violated the TCA both because it was not based on substantial evidence and because the denial had the effect of prohibiting the provision of wireless services. These two arguments require separate analyses; the existence of an effective prohibition does not mean a denial was made without substantial evidence and a finding that a denial was supported by substantial evidence does not mean there was not an effective prohibition. *See Green Mountain I*, 688 F.3d at 50-57. When evaluating whether a zoning authority's denial was supported by substantial evidence, the decision is entitled to deference and the court's focus is on the requirements set forth in the applicable zoning regulation and whether the denial was based on "reasonable inferences from the record before it." *Id.* at 50 (internal quotation marks omitted). On the other hand, when the court considers whether the denial resulted in an effective prohibition, the court is tasked with making an independent assessment based on all the available evidence and the zoning authority's decision is not entitled to deference. *Green Mountain II*, 750 F.3d at 39-40. The court turns first to the substantial evidence analysis.

A. Substantial Evidence – Count I

The Leicester zoning ordinance includes a specific section governing wireless communication at Section 5.4. Pursuant to the language of Section 5.4, "the purpose of [the] regulations include minimizing adverse impacts of wireless communications facilities on adjacent properties, historic areas and residential neighborhoods, minimiz[ing] the overall number and height of such facilities to only what is essential, . . . and avoid[ing] damage to adjacent properties from facility failure through engineering and careful citing of facilities." (Dkt. 1-4, Excerpt of Leicester Zoning Ordinance.) Section 5.4 also lists a number of items that must be submitted with an application for a special permit, including an evaluation of the feasibility of using existing buildings or wireless facilities, a Site Justification Statement describing the narrowing process used to eliminate potential sites; and a fall zone analysis. The substantial evidence requirement of the TCA does not bar local authorities from applying general standards set out in a zoning code, including those that take aesthetic considerations into account. *Sw. Bell.*, 244 F.3d at 61.

In its decision denying the application for a special permit, the ZBA found (1) the project as proposed in the application was inconsistent with the purposes stated in Section 5.4 because it is in close proximity to a residential neighborhood and the applicant had not demonstrated that there were no alternative sites that would have less impact on neighborhoods, (2) the Radio Frequency Report provided by Verizon was not an adequate Site Justification Statement because it did not detail how alternative sites were identified, considered, and eliminated from consideration; (3) the project as proposed did not minimize visual impact because the proximity of the tower to residential areas and the site's reliance on screening from off-site vegetation; and (4) concern that Verizon had not "adequately demonstrated that the tower wouldn't fall beyond the property lines in the event of catastrophic failure." (Dkt. 1-6, March 22, 2016 Decision of the ZBA.)

The court's review of the record before the ZBA demonstrates the board relied on substantial evidence in reaching these conclusions. The first three reasons offered by the ZBA were

9

based on a sense among members of the ZBA that Verizon had identified the Proposed Site as its preferred location and had not given serious consideration to other sites that could have provided sufficient, though more limited coverage, but would have had less impact on residential neighborhoods. There was ample evidence before the ZBA supporting such an inference. For example, although Section 5.4 requires special permit applications include both a Site Justification Statement and an evaluation of the feasibility of using existing structures, the only submission relevant to those requests made by Verizon at the time it filed the application was a three paragraph description of Verizon's site search and selection process in which it is simply stated that "Verizon Wireless determined that there are no existing structures suitable for collocation with respect to its network requirements, and that constructing a wireless communications facility at 30 Huntoon Memorial Highway is the best solution to address the targeted coverage and capacity objectives." (Dkt. No. 1-3, Verizon RF Report 4.) Early on in the hearing the attorney for Verizon generally described the process Verizon used to identify its preferred site and provided some details as to why certain sites were eliminated from consideration, but the information provided was not comprehensive. (Dkt. 17-5, Hearing Minutes 3.) Verizon's attorney also asserted Verizon had worked with the Town Administrator to identify alternative sites and that assertion was later called into question. (*Id.* at 26.)

During the hearing members of the ZBA noted that the proposed site did not fully eliminate the coverage gap. (Dkt. 17-5, Hearing Minutes at 27-29.) They also identified an alternative site that would cover much of the same area covered by the Proposed Site, but did not appear to have been seriously considered by Verizon. (*Id.*) During the hearing, members of the ZBA asked questions about whether in the future there would need to be an additional tower to fill the rest of the coverage gap and whether such a tower combined with one sited at an alternative location would

completely close the coverage gap. (*Id.*) Verizon's response to this line of inquiry was simply that no additional towers were currently planned.

At the final session of the hearing, members of the ZBA discussed the areas of coverage provided by a tower at the Proposed Site versus one at the Cooper's Farm site. (*Id.* at 44-45.) After having a chance to review the coverage maps provided by Verizon, some members questioned whether an alternative site, while not Verizon's preferred site, would better balance the competing interests because it would have significantly less impact on residential neighborhoods. (*Id.*) The ZBA's decision to undertake that type of balancing of alternative sites was a reasonable approach to ensure that adverse impacts on residential neighborhoods and the visual impact of the project were minimized.

The other rationale offered by the ZBA for its denial was similarly based in the zoning ordinance and evidence available to the ZBA. Another purpose of Section 5.4 was to "avoid damage to adjacent properties from facility failure through . . . careful siting of facilities" and, to support that purpose, the section required applicants to submit a fall zone analysis. (Dkt. 1-4, Excerpt of Zoning Ordinance 30.) According to the fall zone analysis, which was submitted only in response a request from the ZBA, tower failure is rare, but were it to occur the fall zone would be half the length of the height of the tower. (Dkt. No. 17-1, Part 1 of the Administrative Record, Aff. of M. Chretien 47.) Although the initial application stated the proposed facility would be "more than 100 feet from the nearest property lines in all directions," (Dkt. 1-3, App. for Special Permit 6), during the hearing Verizon's engineer noted that one of the property lines was only 63 feet from the proposed tower, which put adjacent properties within the 75-foot fall zone.

As the First Circuit made clear when it previously considered a denial pursuant to Section 5.4 of the Leicester Zoning Ordinance, the TCA does not prevent municipalities from applying general zoning standards to wireless communications projects, provided the record supports the

11

conclusions reached by the zoning authority. *Sw. Bell*, 224 F.3d at 61. Though there is a dispute among the parties about whether the project proposed by Verizon is the only feasible alternative for closing the coverage gap, there is no dispute about what evidence was before the ZBA. Based on that evidence, the ZBA could reasonably conclude Verizon had not fully explored alternative locations; there was at least one alternative location that would have considerably less impact on residential neighborhoods while filling in much of the coverage gap; and the fall zone of the proposed tower would extend past one property line. Defendants are, therefore, entitled to entry of summary judgment as to Plaintiff's claim that the ZBA's denial was not based on substantial evidence.

B. Effective Prohibition – Count II

When a denial, even one based on substantial evidence, causes an "effective prohibition of the provision of wireless services," the denial violates the TCA. *Green Mountain II*, 750 F.3d at 35. "Whether or not an effective prohibition has occurred depends on each case's unique facts and circumstances, and 'there can be no general rule classifying what is an effective prohibition.'" *Id.* at 40 (quoting *Second Generation Props.*, 313 F.3d 620, 630 (1st Cir. 2002)). Summary judgment is appropriate where the record of undisputed facts demonstrates there is a significant coverage gap and "the existing application is the only feasible plan" that will remedy the gap. *Id.* If the undisputed record demonstrates the only feasible alternative is simply a minor design change, such as a limited reduction in the height of a tower, the applicant has met its burden of demonstrating there were, in fact, no feasible alternatives to the proposed plan. *See id.*

The parties agree there is a significant coverage gap in Leicester and that the proposed tower will not completely remedy that gap. However, there is a genuine dispute as to the exact contours of the area that needs additional coverage. Stated more precisely, the parties disagree about whether a

tower at an alternative site can remedy the coverage gap for the areas of specific concern to Verizon. Having reviewed the minutes from the ZBA hearing and the maps provided by the parties, the court cannot say for certain that a tower at the Cooper's Farm site would be unable to provide coverage to the main areas identified by Verizon. Since Verizon, as the applicant, bears the "heavy burden" of demonstrating that the proposed plan was the "only feasible plan" that would remedy the coverage gap, it is not entitled to summary judgment as to this claim. *Id.* at 40.

### C. State Law Claim – Count III

The third and final claim raised by Plaintiff, asserts Section 5.4 of the Leicester Zoning Ordinance is impermissibly vague, in violation of Massachusetts law, because the phrases "adverse impact" and "minimal visual impact" provide no discernable standards to guide the decisions of the ZBA. In response, Defendants argue the First Circuit found Section 5.4 contained such adequate standards when it rejected an argument that the Leicester ZBA could not base a denial decision on aesthetic concerns that cannot be quantified. *Sw. Bell*, 244 F.3d at 60-61. Defendants' reliance on *Southwestern Bell* is misplaced because, in that case, the First Circuit considered whether the ZBA's denial satisfied the TCA's substantial evidence requirement. *Id.* The court concluded only that the TCA does not require a zoning authority to base its decision only on quantifiable concerns, versus general aesthetic concerns. *Id.*

Under Massachusetts law, a zoning bylaw "must provide the board both with sufficient standards and with sufficient specificity as to the terms used in the bylaw." *Fordham v. Butera*, 876 N.E.2d 397, 399 (Mass. 2007). A zoning bylaw contains insufficient standards if the board's decisions are "subject to the 'untrammeled discretion' or 'unbridled fiat' of the board." *Id.* at 400 (quoting *MacGibbon v. Bd. of Appeals of Duxbury*, 255 N.E.2d 347, 350 (Mass 1970)). This is a high standard. Zoning boards are permitted to exercise discretion when making decisions and bylaws are

afforded "'every presumption'" that they contain adequate standards. *Id.* (quoting *Simeone Store Corp. v. Oliva*, 213 N.E.2d 230, 234 (Mass. 1965)). Massachusetts courts have previously upheld far broader standards, including a standard requiring only that before issuing a permit, the board "consider[] the effects upon the neighborhood and the City at large.'" *Id.* at 400-01 (quoting *Burnham v. Bd. of Appeals of Gloucester*, 128 N.E.2d 772, 774-75 (Mass. 1955) and collecting cases).

Read in the larger context of Section 5.4, the language about minimizing "adverse impacts" and "visual impact" gives the ZBA discretion to require that, when there are alternatives available, wireless communication facilities be sited in such a manner that they will not be at risk of falling onto adjacent properties and will be as unobtrusive as possible in historic areas or residential neighborhoods. Though this type of balancing is necessarily fact specific, it does not grant "boundless discretion," as the ordinance, consistent with the requirements of the TCA, does not allow the ZBA to turn down a special permit for a wireless communication facility that is necessary, even if the project will have significant impact on surrounding areas. Additionally, these terms are sufficiently specific. They clearly convey to applicants seeking to site wireless communication facilities that, when designing and siting such facilities, consideration should be given to designs and sites that are less visible and not just to the cheapest design or even the best option from an engineering perspective. Summary judgment is, therefore, granted in favor of Defendants as to Count III.

## VII. CONCLUSION

Both parties sought summary judgment in their favor as to each of the three counts in the complaint. For the foregoing reasons, Defendants' Motion for Summary Judgment is hereby ALLOWED as to Count I, asserting the ZBA's decision was not based on substantial evidence in violation of the TCA, and Count III, asserting Section 5.4 of the Leicester zoning ordinance is

impermissibly vague under Massachusetts law. Plaintiff's Motion for Summary Judgment as to those claims is therefore DENIED. As to Count II, asserting the ZBA's decision constituted an effective prohibition on the provision of personal wireless services in violation of the TCA, the court has concluded that summary judgment in favor of either party is inappropriate because there exist genuine disputes as to material facts. Both parties' Motions for Summary Judgment as to Count II are, therefore, DENIED. The court will schedule a status conference to discuss the schedule for resolving Count II.

    It is So Ordered.

/s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge